IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

STEVE A. POSEY, #159154,               )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )          CASE NO. 2:12-CV-906-WHA
                                       )                  [WO]
                                       )
J. C. GILES, et al.,                   )
                                       )
          Defendants.                  )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION

In this 42 U.S.C. § 1983 action, Steve A. Posey ("Posey"), an indigent state inmate,
alleges that correctional officials acted with deliberate indifference to his safety by failing
to protect him from attack by a fellow inmate, Calvin Woolsey, during a previous term of
confinement at the Ventress Correctional Facility ("Ventress"). *Complaint - Doc. No. 1* at
3.  Posey also challenges the adequacy of medical treatment provided to him for an injury to
his right eye suffered in this attack. *Id.*  Posey names Warden J. C. Giles, Assistant Warden
James Carlton, Capt. Cedrick Specks, Kim Thomas, the former commissioner for the
Alabama Department of Corrections, Officer Levi Richardson, Nurse Anthonette Marsh and
Dr. John Peasant as defendants in this cause of action.  Posey seeks monetary damages from
the defendants in their official and individual capacities for the alleged violations of his
constitutional rights.  *Id.* at 4.

The defendants filed special reports and supporting evidentiary materials addressing the plaintiff's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat each of these reports as a motion for summary judgment.  *Order of January 2, 2013 - Doc. No. 29*.  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of these motions, the evidentiary materials filed in support thereof, the sworn complaint, the plaintiff's rebuttals and sworn response  to the reports, the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving

---

[1]  Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motions for summary judgment, Posey is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not

3

significantly probative ... summary judgment may be granted." *Anderson*, 477 U.S. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only

4

factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Posey has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants. *Matsushita*, *supra*.

## III.  DISCUSSION

### A.  Absolute Immunity - Correctional Defendants

To the extent Posey sues defendants Giles, Carlton, Specks, Thomas and Richardson in their official capacities, they are immune from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).   "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).  Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, defendants Giles, Carlton, Specks, Thomas and Richardson are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

## B.  Deliberate Indifference to Safety by Correctional Defendants

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844-845 (1994) (internal quotations and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id*. at 834.  "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of ... the prison staff.  They are [also] under an obligation to take reasonable measure to guarantee the safety of the inmates" as well. *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984).  The Eleventh Circuit has, however, "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety. *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990)...." *Purcell ex rel. Estate of Morgan v. Toombs County, Ga*., 400 F.3d 1313 (11th Cir. 2005).  "Only '[a] prison official's deliberate

indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.' *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm ... exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-1029 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and ***he must also draw the inference***.... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***." *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The

conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests

or safety....  It is obduracy and wantonness, not inadvertence or error in good faith, that

characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether

that conduct occurs in connection with establishing conditions of confinement, supplying

medical needs, or restoring official control over a tumultuous cellblock." *Whitley v. Albers*,

475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively
> aware of the substantial risk of serious harm in order to have had a
> '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834-38, 114
> S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25,
> 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of
> harm and legal causation, the prison official must be aware of specific facts
> from which an inference could be drawn that a substantial risk of serious harm
> exists - and the prison official must also "draw that inference." *Farmer*, 511
> U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).   A defendant's subjective

knowledge of the risk must be specific to that defendant because "imputed or collective

knowledge cannot serve as the basis for a claim of deliberate indifference....  Each individual

Defendant must be judged separately and on the basis of what that person [knew at the time

of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he

known risk of injury must be a strong likelihood, rather than a mere possibility before a [state

official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d

1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted).  Thus, "[m]erely

negligent failure to protect an inmate from attack does not justify liability under section

1983." *Id.*

Posey alleges that the correctional defendants acted with deliberate indifference to his safety with respect to an attack perpetrated against him by inmate Calvin Woolsey on July 23, 2012.   Posey argues that defendants Giles, Carlton, Specks, Richardson and Thomas failed to ensure his safety from attack by this inmate because the facility was overcrowded and "there [were] not enough guards" on duty at the time of the attack. *Complaint - Doc. No. 1* at 2-3.   Posey further complains that defendant Richardson failed to intervene to stop this attack.   *Id.* at 3.   With respect to this latter assertion, Posey alleges that Richardson "ran out of the dorm during the attack [because] he wasn't prepared to protect [me].   [Richardson] didn't have a baton or mace....   Officer Terry [who was armed with a chemical agent] come in and stop the incident" by utilizing his Sabre Red pepper spray.   *Id.*

Posey does not allege that he complained to any prison official, including defendant Richardson, that he was in danger of being attacked by inmate Woolsey and the record is devoid of evidence suggesting that Posey notified any prison official of a prior incident or threat by inmate Woolsey from which they could infer that a substantial risk of harm existed to Posey.   Instead, Posey argues that the defendants acted with deliberate indifference to the conditions present at Ventress, i.e., overcrowding and lack of staff, and that this indifference resulted in the attack upon him Woolsey.   In his response to the special report of the correctional defendants, Posey alleges that he and inmate Woolsey "had a platonic relationship" of which the defendants were aware, a "hostile" environment existed at the

10

facility and Woolsey had at some time "stabbed other inmates" at Ventress. *Plaintiff's Response - Doc. No. 36* at 1.

(i) <u>Officer Richardson - Failure to Intervene</u>.  The crux of the allegation made by Posey against defendant Richardson concerns Richardson's failure to intervene when he observed inmate Woolsey physically attacking Posey.  "Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence....  However, in order for liability to attach, the officer must have been in a position to intervene."  *Terry v. Bailey*, 376 Fed. Appx. 894, 896 (11th Cir.2010).  "An officer who fails to intervene in a fight between inmates can only be held liable if he 'was physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff.'  *Glispy v. Raymond*, 2009 WL 2762636 (S.D.Fla., Aug.28, 2009) (citing *Ensley [v. Soper]*, 142 F.3d [1402], 1407 [11[th] Cir. 1998)]; *Byrd v. Clark*, 783 F.2d 1002 (11th Cir. 1986))."  *Seals v. Marcus*, 2013 WL 656873, at *7 (M.D.Ga. 2013).  The plaintiff has the burden of demonstrating that the defendant was in a position to intervene but failed to do so.  *Ledlow v. Givens*, 500 Fed. Appx. 910, 914 (11th Cir. 2012) (*citing Hadley v. Gutierrez*, 526 F.3d 1324, 1330–1331 (11th Cir. 2008)).

Posey claims that defendant Richardson failed to adequately respond when Woolsey initially attacked him with a shank.  Defendant Richardson asserts that under the circumstances at hand he undertook appropriate measures to gain control of the situation.

11

Specifically, defendant Richardson states that:

> The day of this incident, I was assigned as the rover for F1 dorm. While roving [this dorm], I observed Inmate Steve Posey and Inmate Calvin Woolsey having a verbal confrontation. I ordered both inmates to stop. They continued [to move] toward the front of the dorm. Inmate Woolsey ran out of the bathroom with a shank in his hand swinging at Inmate Posey. Both inmates fell to the floor. I radioed for assistance. Officer Steve Terry entered F1 Dorm and sprayed Inmate Woolsey [with his pepper spray]. Both inmates were treated at the Health Care Unit.
>
> At no time did I ... leave F Dorm.
>
> Officers are not allowed to carry their own equipment [such as a baton or chemical agent]; it has to be checked out but is not required. On this particular date, I had not checked out any equipment.
>
> I do not know what the inmates were arguing about. Prior to the incident, I was not aware of any specific or prior threats toward Inmate Steve Posey. There has not been any excessive violence in F Dorm that I am aware of.

*Correctional Defendants' Exhibit E (Aff. of Levy Richardson) - Doc. No. 28-5* at 2;

*Correctional Defendants' Exhibit B (Aff. of J. C. Giles) - Doc. No. 28-2* at 1-2 ("Only officers that are qualified are allowed to check out and carry a chemical agent. Sabre Red (chemical agent) is available to be checked out on a daily basis. Officer Levy Richardson did not check out any chemical agent on this date, therefore, he called for backup in the dorm when he observed the inmates were fighting. It is protocol for officers to call for backup when they observe altercations in order to prevent further problems arising in the dorm."); *Correctional Defendants' Exhibit D (Aff. of Cedric Specks) - Doc. No. 28-4* at 2 ("Officer Levy Richardson did not have any chemical agent [on the day of the altercation at issue] and as is protocol called for assistance."). Officer Terry, the assigned rover for Dorm F-4, upon being

advised by an inmate that inmates in Dorm F-1 were fighting, immediately entered the dorm and "observed Inmate Calvin Woolsey ... attempting to stab Inmate Steve Posey ... in his chest area with an inmate made shank.  I yelled, 'Gas!' and sprayed a two (2) second burst of Sabre Red to the facial area of both inmates.  I observed Inmate Steve Posey exit the dorm into the lobby.  Inmate Calvin Woolsey ... dropped the shank and ran into the shower area." *Correctional Defendants' Exhibit F (Aff. of Steve Terry) - Doc. No. 28-6* at 2.  Correctional personnel immediately placed inmate Woolsey in administrative segregation for his attack on Posey and Woolsey received a disciplinary for assault on an inmate.  *Correctional Defendants' Exhibit G- Doc. No. 28-7* at 3; *Correctional Defendants' Exhibit H - Doc. No. 28-8* at 2-3.

It is undisputed that at the time of the incident inmate Woolsey was armed with a weapon whereas defendant Richardson was not in possession of any safety equipment which could be used in defense of either himself or Posey.  Richardson therefore radioed for assistance from other correctional officers.  Officer Terry then entered the dorm and applied pepper spray to the inmates causing Woolsey to cease his assault on Posey.  Based on the foregoing, the court concludes Posey has failed to establish that an unarmed defendant Richardson was in a position to intervene on his behalf against an armed assailant. Moreover, Posey has not demonstrated that an unreasonable or inordinate amount of time passed from the time the assault began until officer Terry arrived and applied pepper spray to the inmates.  The fact that defendant Richardson did not interject himself into the

altercation between Posey and Woolsey before backup arrived does not amount to deliberate indifference. *Terry*, 376 Fed. Appx. at 896; *Ledlow v. Givens*, 500 Fed. Appx. 910, 914 (11th Cir. 2012) (holding that district court properly granted summary judgment to defendant correctional officer where plaintiff "presented no evidence that [officer] had the ability to reasonably insert himself between [the inmates] to stop the assault without additional help" nor had he presented "evidence ... as to how long this assault went on before intervention occurred."). Finally, "no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence. The officer[] violated no 'clearly established' law by falling to intervene while unarmed." *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006); *MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir.1995) (prison officials did not act with deliberate indifference when, in accordance with prison policy, they called for additional staff before intervening in an inmate fight). Consequently, defendant Richardson is entitled to summary judgment on the claim lodged against him by Posey for failure to intervene.

(ii) <u>Inadequate Security - Failure to Protect from Attack</u>. Posey maintains that the correctional defendants failed to protect him from attack by inmate Woolsey "due to over crowd[ing]" and the failure to assign "enough guards in Dorm F." *Complaint - Doc. No. 1* at 2-3. In his response to the correctional defendants' report, Posey also asserts that the large number of inmates at Ventress created a "hostile" environment and alleges that inmate Woolsey had committed other assaults while at the facility. *Plaintiff's Response - Doc. No.*

*36* at 1.  In response, Warden Giles avers that:

> Inmate Steve Posey ... alleges he was stabbed due to the institution being overcrowded and understaffed.
>
> Ventress Correctional Facility was designed for 650 inmates and now has a capacity of 1650 inmates.  All efforts are made to ensure proper security in all dorms as there are always two (2) officers assigned in Dorms E and F which is where inmate Steve Posey was assigned.  The other dorms are structured with Substance Abuse Programs and require less security during the day.
>
> > \*     \*     \*
>
> There has not been any unusual violence or incidents [of violence] occurring in Dorm F.
>
> I am unaware of Inmate Steve Posey being threatened by an[y] inmates until this [incident] occurred on this date.  Inmate Calvin Woolsey ... was placed in disciplinary segregation following the incident and charged with Assault on another inmate.  He was reclassed and transferred to Holman Correctional Facility on August 22, 2012.  Inmate Steve Posey was transferred to Limestone Correctional Facility by [the] Investigations and Intelligence Division on August 30, 2012.

*Correctional Defendants' Exhibit B (Aff. of J. C. Giles) - Doc. No. 28-2* at 1-2; *Correctional Defendants' Exhibit C (Aff. of James Carlton) - Doc. No. 28-3* at 1-2 (same);  *Correctional Defendants' Exhibit D (Aff. of Cedric Specks) - Doc. No. 28-4* at 1-2 ("Inmate Steve Posey ... never reported to me that he was in fear of his safety at any time prior to this incident.... [I]t is not true [that additional incidents of violence occur in Dorm F]; ... two (2) officers are assigned in this dorm to prevent any problems from arising.").

Posey alleges that the defendants acted with deliberate indifference to the overcrowding and under staffing at Ventress which resulted in the attack by inmate Woolsey.

15

Posey makes the conclusory allegation that Warden Giles and Capt. Specks "had been alerted about [Woolsey]" but does not set forth the specific nature of the information provided to these defendants regarding this inmate nor the time when they received such information. *Plaintiff's Response - Doc. No. 36* at 1.  Posey also alleges that Woolsey "had stabbed other inmates at the camp in the same dorm." *Id*.  Posey, however, does not provide any facts in support of this allegation or the basis of this "knowledge," nor does he assert that he feared for his safety due to Woolsey's prior behavior.  Moreover, the record is devoid of evidence that Posey informed any of the defendants he was at risk of attack by Woolsey.  Rather, Posey states only that "he had a platonic relationship with [this] inmate." *Id*.

There is no probative evidence before the court of "an objectively substantial serious risk of harm" posed by inmate Woolsey to Posey prior to the attack at issue as is necessary to establish deliberate indifference. *Marsh*, 268 F.3d at 1028-1029; *Johnson v. Boyd*, 568 Fed. Appx. 719, 722 (11th Cir. 2014) (Inmate-attacker's destructive behavior in cell prior to attack did "not sufficiently allege that [attacker's] behavior created a 'strong likelihood' of injury to [inmate-plaintiff]."); *Carter*, 352 F.3d at 1350 (Deliberate indifference requires "much more than mere awareness of [an inmate's] generally problematic nature."). Moreover, even if Posey had satisfied the objective component, his deliberate indifference claim nevertheless fails as he has not established that the defendants were subjectively aware of any risk of harm to him posed by Woolsey. *Johnson*, 568 Fed. Appx. at 722 (complaint properly dismissed for failure to state a claim because "[n]owhere does the complaint allege,

nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [inmate-attacker]."); *McBride v. Rivers*, 170 Fed. Appx. 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because Plaintiff merely advised he "had problems" with fellow inmate and was "in fear for [his] life."); *Johnston*, 135 Fed. Appx. at 377 (Where allegations simply inferred that prison officials should have known that inmate-attacker posed a threat to others due to past behavior and general verbal threats, defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [fellow inmate]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any fear [he] felt."); *Chatham v. Adcock*, 334 Fed. Appx. 281, 293-294 (11th Cir. 2009) ("[A]lthough Plaintiff asserts that [fellow inmate] threatened him repeatedly in the days before the assault, Plaintiff has not identified any specific 'serious threat' from [fellow inmate], which he then reported to [the defendants].... The fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'"); *Harrison v. Culliver*, 746 F3d 1288, 1300 (11th Cir. 2014) (Although increasing the number of officers in an area of the facility "may have improved security, [the warden's] decision not to do so did not create a substantial risk of harm. *Cf. Connick v. Thompson*, [563] U.S. [51], ----, 131 S.Ct. 1350, 1363, 179 L.Ed.2d

17

417 (2011) ('[Section 1983] does not provide plaintiffs or courts *carte blanche* to micromanage local governments throughout the United States.'"); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313, 1321 (11th Cir. 2005) (Despite occurrence of previous inmate attacks at the jail, conditions, including permitting inmates to play cards, gamble and keep money in their cells, "failed to pose the substantial risk of serious harm necessary for a violation of the federal Constitution" where inmates were classified by the nature of their offenses, segregated based on potential conflicts with other inmates, adequate staff was present at the time of the attack, serious inmate-on-inmate violence was not rampant, fights that occurred were not linked to a recurring specific cause and jailers had a history of punishing inmate violence.). In light of the foregoing, summary judgment is due to be granted in favor of the correctional defendants on the claim alleging that they acted with deliberate indifference to Posey's safety.

### C.  Deliberate Indifference to Eye Injury by Medical Defendants

Posey asserts that Dr. Peasant and Nurse Marsh acted with deliberate indifference to the right eye injury he suffered in the attack by inmate Woolsey. To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, medical

personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11ᵗʰ Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11ᵗʰ Cir.1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11ᵗʰ Cir.1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11ᵗʰ Cir.1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7ᵗʰ Cir.1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11ᵗʰ Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need ..., Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser*

*Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009).   When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).   Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).   Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, ... the Supreme Court has ... emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.   Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).   Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.   *See Estelle,* 429 U.S. at 106, 97

> S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference violative of the Constitution).

Posey complains that the medical defendants acted with deliberate indifference to the injury inflicted on his right eye.  Specifically, Posey alleges that he suffered "severe damage to [his] eye socket" and should have been placed in the health care unit for observation after the initial provision of treatment rather than returned to his cell.  *Complaint - Doc. No. 1* at 5.  Posey further argues that the defendants denied him appropriate follow-up treatment for his eye injury and did not fill a prescription for eye glasses provided to him by the off-site

ophthalmologist on August 14, 2012, *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 2) - Doc. 17-3* at 33, prior to his transfer from Ventress.[2]  *Complaint - Doc. No. 1* at 3.

The evidentiary materials filed by the medical defendants address the allegations made by Posey.  In his initial affidavit, Dr. Peasant addresses the treatment provided to Posey for the injury to his right eye as follows:

> I am familiar with the health care provided to inmate Steve A. Posey (AIS #159154) during his incarceration at the Ventress Correctional Facility. I have first-hand knowledge of the medical treatment that Mr. Posey received during his incarceration at Ventress.
>
> I have reviewed Mr. Posey's medical chart and I am familiar with the allegations that Mr. Posey makes in his Complaint.
>
> A copy of Mr. Mr. Posey's medical chart from the year 2012 is attached hereto.
>
> On July 23, 2012, Mr. Posey was initially seen in the health care unit of the Ventress Correctional Facility at approximately 1:30 p.m.  Mr. Posey presented with a laceration [of approximately 3.5 centimeters] over his right eyebrow [and other smaller lacerations over his left eye, above his left ear and on his forearm].  The[se] wound[s] [were] cleaned [and bandaged] and I personally placed three sutures above Mr. Posey's right eyebrow.  [Mr. Posey was also prescribed Keflex, an antibiotic, to prevent infection at this time. *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 1) - Doc. 17-2* at 35.]
>
> Mr. Posey returned to the health care unit at approximately 11:15 p.m. on the evening of July 23, 2012.  Mr. Posey had blown his nose and felt swelling in his eyes.  The nurse called me and I was notified of Mr. Posey's situation.  Mr. Posey was immediately transferred to the Troy Regional Medical Center via Alabama Department of Corrections' transportation van.

---

[2]  Posey was transferred from Ventress to Kilby on August 29, 2012 and from Kilby to  Limestone the following day.  *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 2) - Doc. 17-3* at 10-11.  Thus, Posey remained at Ventress for only fifteen (15) days after receipt of the prescription for eye glasses.

Mr. Posey was transported to the Troy Regional Medical Center shortly before midnight on July 23, 2012.

While at the Troy Regional Medical Center, Mr. Posey was seen by Timothy Estes, M.D. for the wound to Mr. Posey's right eye.  A CT [scan] was performed of Mr. Posey's facial bones.  The results of the CT scan revealed as follows:

> There is prominent subcutaneous emphysema in the region of the right orbit.  There being quite prominent pre-orbital involvement and intra-orbital involvement, as well as retrobulbar involvement.  There is proptosis of the right globe.  There is a fracture of the right orbital floor with a small amount of herniation of orbital contents.  There is equivocal minimal irregularity to the medial orbital wall also.  There is partial opacification of the right ethmoidal and maxillary sinuses.  No obvious deformity of the occular musculature and optic nerve is seen but this could be better evaluat[ed] with an MRI study if desired.  The mastoid bones appear normally aerated.  No other significant findings are seen.

*Medical Defendants' Exhibit A (Aff. of Dr. John Peasant) - Doc. No. 17-1* at 2-4.

On July 24, 2012, Dr. Peasant performed a follow-up examination of Posey and prescribed medication to alleviate pain and swelling.  *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 2) - Doc. 17-3* at 4, 25; *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 1) - Doc. 17-2* at 34.  Dr. Peasant also submitted a request that Posey be referred to Dr. Michael K. Bowman, a free world otolaryngologist, for evaluation and treatment of his eye injury.[3]  *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 3) - Doc. 17-4* at 17.  Dr. Hugh Hood approved this consultation request on July 25, 2012 and medical personnel scheduled Posey an appointment with Dr.

---

[3] An otolaryngologist specializes in treatment of the ears, eyes and nose.

Bowman for August 2, 2012.  *Id*.

On July 24, 2012, Dr. Peasant referred Posey to Dr. James D. Izer, an ophthalmologist at the Institute for Total Eye Care ("ITEC ") in Montgomery, Alabama, for evaluation of his eye injury.  Dr. Izer examined Posey on July 25, 2012 and determined that Posey maintained a visual acuity in his right eye of 20/25 with "no signs of globe involvement [and only] mild iritis."  *Id*. at 15.  Dr. Izer suggested that Posey receive prescriptions for eye drops and an antibiotic and requested that a follow-up appointment be made for Posey in one week.  *Id*. When Posey returned to Ventress from his free-world appointment, Dr. Peasant continued Posey's prescription for Keflex and prescribed the Pred Forte drops recommended by Dr. Izer.  *Id*. at 16; *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 2) - Doc. 17-3* at 6, 25.  Dr. Peasant also completed a follow-up examination of Posey.  *Id*. at 6.

Posey returned to ITEC for a follow-up appointment with Dr. Izer on July 31, 2015. Dr. Izer observed that the drooping of Posey's eye had improved and the injury site had healed in an appropriate manner allowing for removal of his sutures.  *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 3) - Doc. 17-4* at 8.  Dr. Izer  suggested continuance of the Pred Forte eye drops "to ensure intraocular inflammation [is] gone before [discontinuing eye drops]."  *Id*.  Dr. Izer advised that a follow-up appointment should be scheduled in two weeks.  *Id*. at 9.

Dr. Peasant examined Posey on August 1, 2012 at which time Posey advised he felt "good" and Dr. Peasant observed only "some redness present" at the site of the injury to his

right eye. *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 2) - Doc. 17-3* at 6. Dr. Peasant noted that the extraocular movements are "intact [with] no signs of entrapment of eye muscles." *Id.* at 35. Dr. Peasant continued provision of the Pred Forte eye drops to Posey in accordance with the suggestion of Dr. Izer, advised Posey to follow-up with him as needed and noted Posey's impending appointment with Dr. Bowman. *Id.* at 6.

The following day, Posey was transported to Montgomery Otolaryngology for examination by Dr. Bowman. Dr. Bowman observed that "[t]he entrance wound was present over the right eye. It appears to be healing well. There is some resolving ecchymosis [or bruising] present around the right eye. His extraocular movements are intact. He reports no change in his vision." *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 3) - Doc. 17-4* at 5. The results of Dr. Bowman's examination and diagnostic scan were as follows:

> Nasal, Sinus Complete:
> Keros type 1 present (Olfactory fossa is 1-3 mm deep); Quality of the scan is good; No significant sinusitis is noted bilaterally in the maxillary, ethnoid, sphenoid, or frontal sinuses. A small amount of intraorbital air is noted on the right side. I cannot appreciate attention turned, but there may be a small bony defect in the posterior lateral and inferior aspect of the orbit, which extends mostly lateral to the maxillary sinus and not into it. No significant herniation of orbital contents is appreciated into the maxillary sinus, around the lamina papyracea or other areas around the orbit.
>
>       *     *     *
>
> He had a penetrating wound to the right orbit, with out injury to the globe or his vision.
> His persistent orbital emphysema is not unexpected. I recommend that he avoid blowing his nose for about a month or so. After that time he can begin

> gently blowing his nose [as] normal.
> The tract allowing air passage should close on its own.  Even if it does persist
> to a small degree, I would not recommend intervention, as the risks  outweigh
> the benefits.

*Id*. at 5-6.

On August 7, 2012, Dr. Peasant examined Posey with respect to complaints of "[right]
eye pain [when] looking upward ... [and] seeing 2 black lines." *Medical Defendants' Exhibit
1 (Plaintiff's Medical Records - Part 2) - Doc. 17-3* at 5.  Dr. Peasant determined that
Posey's extraocular movements were intact and could find no basis to support Posey's
complaints so he ordered no additional treatment at that time.  *Id*.  Dr. Peasant reviewed Dr.
Bowman's conclusion that Posey was doing well and noted that Posey was scheduled for an
appointment with Dr. Izer on August 14, 2012.  *Id*.

On August 14, 2015, Posey was transported to ITEC for his next scheduled follow-up
appointment with Dr. Izer.  *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records -
Part 2) - Doc. 17-3* at 34.  Dr. Izer examined Posey and observed that his iritis was "better"
and suggested a reduction in the daily dosage of Pred Forte eye drops utilized by Posey.  *Id*.
Dr. Izer noted that a follow-up appointment was "need[ed] to make sure [no] flare up" of the
iritis occurred upon implementation of the decreased dosage of eye drops.  *Id*.  Dr. Izer also
provided Posey a "mild glasses ℞" to increase his corrected vision in both eyes to 20/20 and
suggested scheduling a follow-up appointment in a couple of weeks.  *Id*.  Correctional
medical personnel scheduled the requested with Dr. Izer for August 28, 2012.  *Id*. at 30.

Dr. Peasant examined Posey on August 15, 2015 as a follow-up to the previous day's appointment with Dr. Izer and observed "no new findings."  *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 2) - Doc. 17-3* at 3.  In accordance with Dr. Izer's recommendation, Dr. Peasant provided Posey a 60-day prescription for Pred Forte in the suggested dosage.  *Id.* at 2.

Posey refused an appointment scheduled with Dr. Peasant for August 23, 2012.  *Id.* at 3; *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 1) - Doc. 17-2* at 22. On August 28, 2015, Posey executed a release of responsibility form in which he refused his August 28, 2015 follow-up appointment with Dr. Izer.  *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records - Part 1) - Doc. 17-2* at 21.  Posey "also decline[d] any future appointments pertaining to eye injury that inmate sustained on 7/23/12."  *Id.*[4]

Based on a request by the Investigations and Intelligence Division of the Alabama Department of Corrections, correctional officials transferred Posey from Ventress on August 29, 2012 and he has not returned to Ventress since this transfer.  Consequently, the medical defendants have not been involved with any treatment provided to Posey since August 29, 2012.

In a supplemental affidavit, Dr. Peasant provides the following information in

---

[4] Posey alleges that "[h]e didn't refuse medical" treatment and requests that the court examine the medical records of other inmates for possible falsified records.  *Plaintiff's Rebuttal - Doc. No. 37* at 1. This dispute has no bearing on the question of whether the treatment provided to Posey was deliberately indifferent.

response to Posey's challenges questioning the medical treatment provided for his eye injury

immediately after the assault:

> On July 23, 2012, Mr. Posey was initially seen in the health care unit of the Ventress Correctional Facility at approximately 1:30 p.m. Mr. Posey presented with a laceration over his right eyebrow. The wound was cleaned and I personally placed three sutures about Mr. Posey's right eyebrow. Mr. Posey did not appear to be in need of any further medical treatment besides the three sutures that were placed above Mr. Posey's eye as well as the cleaning that took place around the wound.

> There was no medical need at that juncture to place a medical hold on Mr. Posey [which warranted] keep[ing] him in the infirmary for investigation [or observation].

> After performing an investigation [of the attack on Mr. Posey], Captain Cedric Specks determined that Mr. Posey could be released back into the general population of the Ventress Correctional Facility....

> I am aware that Mr. Posey has claimed that the medical personnel improperly returned Posey to the prison's general population and that in Posey's opinion he should have been detained in the medical clinic for further observation. I am further aware that Posey alleged that this failure resulted in the loss of vision in his right eye.

> The statements are medically unfounded and untrue.

> Subsequent to being returned to general population by the Department of Corrections, Mr. Posey blew his nose which created pressure on the wound. The pressure created by Mr. Posey blowing his nose created a situation that was not present prior to Posey blowing his nose. Subsequent to this event, Posey was immediately taken to the health care unit and thereafter immediately transferred to the Troy Regional Medical Center.

> Mr. Posey received immediate medical treatment for his situation as soon as the situation occurred. Mr. Posey would not have received any quicker treatment or different treatment had he remained in the infirmary than he received subsequent to him blowing his nose in general population and immediately being transferred to the health care unit.

> Subsequent to being seen at the Troy Regional Medical Center, Mr. Posey was seen by Dr. Michael K. Bowman at Montgomery Otolaryngology. As previously stated in my initial affidavit, Dr. Bowman's recommendations with regard to the treatment for Mr. Posey stated as follows:

> He had a penetrating wound to the right orbit, without injury to

the globe or his vision.  His persistent orbital emphysema is not
unexpected.  I recommend that he avoid blowing his nose for
about a month or so.  After that time, he can begin gently
blowing his nose as normal.  The tract allowing air passage
should close on its own.  Even if it does persist to a small
degree, I would not recommend intervention, as the risks
outweigh the benefits....

As set forth by Dr. Bowman, the wound received by Mr. Posey did not
injure Mr. Posey's globe or Mr. Posey's vision.

*Medical Defendants' Exhibit A (Supplemental Aff. of Dr. John Peasant) - Doc. No. 35* at 4-6.

Dr. James Izer examined Posey on two separate occasions prior to Posey's appointment with

Dr. Bowman on  August 2, 2012.  The first examination by Dr. Izer occurred on July 24,

2012, the day after Posey suffered his injury whereas the second examination took place on

July 31, 2012.  Dr. Izer again examined Posey on August 14, 2012.  In accord with the

observation of Dr. Bowman, Dr. Izer did not find that Posey suffered a loss of vision as a

result of his eye injury; instead, he issued only a "mild" prescription for glasses to Posey and,

at this time, specifically observed that with the use of corrective lenses Posey's visual acuity

would be 20/20 in both eyes.  *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records -*

*Part 2) - Doc. 17-3* at 34.  Based on the treatment provided to Posey by both correctional and

free world medical professionals, Dr. Peasant asserts that "[t]here is no medical evidence

whatsoever to support the fact that Mr. Posey should have been kept at the Infirmary after

his altercation on July 23, 201[2].  There is absolutely no medical evidence that the failure

to keep Mr. Posey at the health care unit resulted in the loss of vision to Mr. Posey's right

eye."  *Medical Defendants' Exhibit A (Supplemental Aff. of Dr. John Peasant) - Doc. No.*

*35* at 7.  The medical treatment provided to Posey for his eye injury is set forth in the medical records filed in this case, *Medical Defendants' Exhibit 1 (Plaintiff's Medical Records) - Doc. No. 17-2 through Doc. No. 17-4*, and there is nothing before the court which undermines the validity of these records.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by medical personnel at Ventress in addressing the injury to Posey's right eye did not violate his constitutional rights.  The medical care Posey received was adequate and certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505.  The allegations presented by Posey simply fail to establish deliberate indifference. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability.  In addition, the inmate's allegation that the prison physician did not diligently pursue alternative means of treating his condition "did not 'rise beyond negligence'... to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1505 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth

Amendment).

It is undisputed that Posey received medical care for the injury he suffered to his right eye and likewise evident that health care personnel rendered treatment to Posey for his condition in accordance with their professional judgment. Based on well settled law, Posey's mere desire for a different mode of treatment or additional treatment upon the initial examination does not constitute deliberate indifference. Moreover, Posey has failed to present any evidence which indicates the defendants knew that the manner in which they provided treatment to him created a substantial risk to his health and that with this knowledge consciously disregarded such risk. The record is therefore devoid of evidence, significantly probative or otherwise, showing that the defendants acted with deliberate indifference to Posey's eye injury. Summary judgment is therefore due to be granted in favor of defendants Marsh and Peasant on the deliberate indifference claim presented against them by Posey. *Carter*, 352 F.3d at 1350.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      The defendants' motions for summary judgment be GRANTED.

2.      Judgment be ENTERED in favor of the defendants.

3.      This case be dismissed with prejudice.

4.      The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **February 11, 2016**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11ᵀᴴ Cɪʀ. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 28th day of January, 2016.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

32